United States District Court
Southern District of Texas
**ENTERED**
August 16, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MDC ENERGY, LLC D/B/A MDC TEXAS ENERGY, LLC, | § § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-03175 |
| | § | |
| CROSBY ENERGY SERVICES, INC. | § | |
| AND JEREMY MARRUFO, | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

This declaratory judgment action arises from Crosby Energy Services, Inc. (Crosby) and Jeremy Marrufo's (Marrufo's) demand for contractual defense and indemnity against claims made against them in an underlying personal injury suit.[1] Plaintiff MDC Energy, LLC d/b/a MDC Texas Energy, (MDC) seeks a declaration that it does not owe any duty to defend or indemnify or to provide insurance coverage to Crosby or Marrufo, Crosby's employee, with respect to the underlying suit. ECF 1 at 5. Crosby, in a Second Amended Counterclaim against MDC, seeks a declaration that MDC is "contractually obligated to defend, indemnify and hold harmless Crosby and Marrufo and to provide liability insurance coverage" for the claims in the underlying suit. ECF 13 at 7. Crosby also seeks a declaration that

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 4.

Crosby and Marrufo are entitled to coverage as additional insureds under MDC's liability insurance policies with respect to the underlying personal injury claims. *Id.* Crosby's Second Amended Third Party Claims against MDC Texas Operator, LLC (Texas Operator) and MDC Reeves Energy, LLC (Reeves), seek a declaratory judgment that collectively, the MDC entities owe a duty to defend and indemnify Crosby, or in the alternative, for reformation of the contract between Crosby and MDC based on mutual mistake. ECF 13 at 12.

Pending before the Court are the parties' cross motions for summary judgment: Plaintiff MDC Energy, LLC d/b/a MDC Texas Energy, LLC's Motion for Summary Judgment (ECF 28) and Defendant Crosby Energy Services, Inc.'s Motion for Summary Judgment (ECF 29). The parties responded to the respective motions. ECF 33; ECF 34; ECF 38; ECF 39 (briefing for MDC's Motion); ECF 32 and ECF 35 (briefing for Crosby's Motion). The Court held a hearing on the pending motions on July 17, 2024. The parties also submitted post-hearing briefing. ECF 49, 51. The cross motions for summary judgment are ripe for consideration. Having considered the parties' briefs, arguments made at the oral hearing, the parties' post-hearing briefs, and the applicable law, the Court RECOMMENDS that MDC's Motion (ECF 28) be GRANTED and Crosby's Motion (ECF 29) be DENIED for the reasons set forth below.

## I.        Background, Legal Standards, and Rulings on Evidentiary Objections

On February 6, 2021, Ruben Leyva was injured while servicing an oil well owned in part by Reeves and operated by Texas Operator.  ECF 29 at 3.  Leyva was employed by Man on Fire Welding, LLC (MOF) at the time of the accident and was performing services pursuant to a Master Services and Supply Contract between MOF and MDC (MOF MSSC).  ECF 1 at 3.  Crosby was also performing services on the well at the time of the accident pursuant to a Master Services and Supply Contract with MDC and Texas Operator (Crosby MSSC).

Leyva filed a personal injury suit in the 143rd District Court of Reeves County, Texas alleging the negligence of Crosby and Marrufo.  ECF 28-1; *see Ruben Leyva v. Jeremy Marrufo & Crosby Energy Services, Inc.*, Cause No. 21-04-23976-CVR (the Leyva suit).  Crosby demanded that MDC (and its insurer) defend, indemnify, and provide insurance coverage to Crosby and Marrufo as additional insureds under the Crosby MSSC.  ECF 28-2; ECF 28-3.  After Crosby's demand for defense and indemnity, MDC filed this declaratory judgment suit seeking a declaration that it owed no such duty.  Crosby filed a counterclaim seeking a declaration that MDC owes the duty to defend and indemnify Crosby and Marrufo against claims in the Leyva suit.  Crosby also filed third party claims against Texas Operator and Reeves seeking declaratory judgment that collectively, the MDC entities identified as part of "Company" in the Crosby MSSC owe a duty to defend

and indemnify Crosby, or in the alternative, for reformation of the Crosby MSSC based on mutual mistake.  ECF 13 at 12.

### A.    MOF Master Services & Supply Contract (MOF MSSC)

MOF and MDC entered into the MOF MSSC on June 2, 2014, more than six years before Leyva was injured.  ECF 28-4.  The MOF MSSC is essentially a master services agreement by which MDC, referred to as "Company," and MOF, referred to as "Contractor," agree that MDC will employ MOF "from time to time in connection with the provision of services for the operation . . . or the development or production of oil, gas, or other minerals . . .."  ECF 28-4 at ¶ 3.1.  The MOF MSSC contemplates that MDC will ask MOF to perform Services for MDC's benefit, and if MOF agrees to do so, the performance of those Services and the parties' relationship with respect to them will be governed by the terms of the MSSC.  *Id*. at ¶ 2.2.   Further, the MSSC between MOF and MDC defined Services as "all services, labor and work performed by [MOF] for the benefit of [MDC] or pursuant to this Contract or otherwise performed in connection with any Goods or Equipment . . .." ECF 28-4 at ¶ 2.1.

### B.    Crosby Master Services & Supply Contract (Crosby MSSC)

Crosby and MDC entered into the Crosby MSSC dated November 16, 2020, a little more than six years after MOF and MDC entered into the MOF MSSC.  ECF 28-3.  For the most part, the Crosby MSSC contains provisions

identical to those in the MOF MSSC. *Compare* ECF 28-3 with ECF 28-4. Whereas the MOF MSSC includes only MDC in the term "Company," ECF 28-4 at 1, the Crosby MSSC identifies MDC and Texas Operator as the "Company." ECF 28-3 at 1. In addition, Exhibit A to the Crosby MSSC includes additional MDC entities MTE Holdings, LLC (MTE) and Reeves in the term "Company." ECF 28-3 at 19. For purposes of the cross motions for summary judgment, the Court will assume that "Company" includes both the entities identified in the Crosby MSSC (MDC and Texas Operator), as well as the entities listed on the Insurance Agreement attached as Exhibit A to the Crosby MSSC (MDC, Texas Operator, MTE, and Reeves). In parallel with the MOF MSSC, the Crosby MSSC identifies Crosby as "Contractor." *Id*. at 1. Like the MOF MSSC, the Crosby MSSC "contemplated that from time to time . . . Company [MDC, Texas Operator, MTE, and Reeves] may request either orally or in writing that [Crosby] render Services . . . for the benefit or account of Company." 28-3 at ¶ 2.2.

## C.    The Parties' contentions

In its declaratory judgment suit, MDC contends that the MDC entities owe no indemnity to Crosby because MOF was MDC's *contractor* and the term "Company Group" includes only MDC's *subcontractors*:

"Company Group" shall mean, individually or in any combination, Company [MDC,Texas Operator, MTE, and Reeves], its subsidiaries,

> affiliates, joint ventures, partners, joint interest owners, co-owners, co-lessees and *subcontractors*, including their respective directors, officers, consultants, employees, servants, representatives, agents and lessees.

ECF 28-3 at ¶ 2.1 (emphasis added). The parties agree that if Leyva's employer, MOF, was not a *subcontractor* of any entity included in the definition of Company Group, then the MDC entities that contracted with Crosby are not required to defend, indemnify, and insure Crosby and Marrufo against claims in the Leyva suit.

In response to MDC's motion for summary judgment and in support of its own motion for summary judgment, Crosby contends that the undisputed summary judgment evidence demonstrates the following: although MOF was a contractor of MDC, it was also a *subcontractor* of Reeves; any *subcontractor* of Reeves is included in the definition "Company Group;" because MOF is part of the "Company Group," Crosby and Marrufo are entitled to be defended, indemnified, and insured by the MDC entities and their insurers against the claims in the Leyva suit. ECF 29 at 9-14; ECF 33 at 2-10. As discussed in more detail below, Crosby's arguments for why MOF was a subcontractor of Reeves, rather than simply a contractor of MDC, rely, at least in part, on principles set forth in the Texas mineral lien statute and case law interpreting it.

### D.    Summary Judgment standards.

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if "the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (internal quotation marks and citation omitted).

Where, as here, parties file cross motions for summary judgment, each movant bears the burden of establishing there are no genuine issue of material fact and that it is entitled to summary judgment. *Careflite v. Office & Prof'l Emps. Int'l Union, AFL-CIO*, 612 F.3d 314, 318 (5th Cir. 2010) (citation omitted). Each motion must be considered with evidence and inferences taken in the light most favorable to the non-moving party. *Form Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

### E.    Rulings on MDC's objections to summary judgment evidence

MDC objected to much of Crosby's summary judgment evidence as barred by the parole evidence rule. The Court agrees with Crosby that the parole evidence rule does not apply to bar Crosby's summary judgment evidence, with the exception noted below. MDC's parole evidence objections are overruled except as specifically stated below.

The Court makes the following rulings on MDC's other objections to Crosby's summary judgment evidence:

- MDC's objections to the Declaration of Donnabelle Hutt attached as Exhibit B (ECF 29-2) are overruled for the purposes of the parties' cross motions for summary judgment.

- MDC's objections the Joint Operating Agreement (JOA) attached as Exhibit E (ECF 29-5) are overruled.

- MDC's objections to the deposition excerpts of Paul Cyphers contained in Exhibit G (ECF 29-7) and are overruled, except that, to the extent that particular testimony discusses the parties' intent when entering into the Crosby MSSC, the objection is granted to the extent the testimony disagrees with or attempts to vary the written terms of the Crosby MSSC. This limited grant of MDC's objection is based on the Court's interpretation of the Crosby MSSC and the conclusion, discussed fully below, that it is unambiguous.

- MDC's objection to information purporting to be from the Texas Secretary of State website and attached as Exhibit K (ECF 33-1) is overruled.

- MDC's objections to the deposition testimony of Jesse Abila attached as Exhibit L (ECF 33-12) are overruled as are MDC's objections to Abila's statement attached as Exhibit M (ECF 33-13).

## II.    Analysis.

The Parties agree that the Crosby MSSC is unambiguous and requires MDC to indemnify Crosby and Marrufo (as "Contractor Group") against personal injury claims made by members of MDC's "Company Group."  The parties dispute only whether the Crosby MSSC can be construed to include Leyva, an MOF employee, in the definition of "Company Group."

### A. The Crosby MSSC is unambiguous and the undefined term "subcontractor" carries its plain and ordinary meaning.

The parties frame their dispute as to whether MOF and its employees fall within the definition of "Company Group" as one of fact.  Despite the parties' framing of the argument as a factual issue, the relevant dispute centers on the interpretation of the term "subcontractor" as used in the Crosby MSSC.  If, after applying the rules of contract interpretation, the term "subcontractor" has only one reasonable interpretation, then the contract is unambiguous and its terms and their legal effect can be interpreted and construed as a matter of law.  *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 119 (Tex. 2015) ("[A] contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning."); *Pathfinder Oil & Gas*, 574 S.W.3d at 889 (written instrument that can be given a certain or definite legal meaning or interpretation is not ambiguous and will be construed as matter of law).

The Crosby MSSC is governed by Texas law so the Court applies Texas law regarding contract interpretation. ECF 28-3 at ¶ 15.3. Under Texas law, a court interprets and construes a contract for indemnity as it would any other contract. *Safeco Ins. Co. v. Gaubert*, 829 S.W.2d 274, 281 (Tex. App. – Dallas 1992, writ denied). Courts "give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Parties are free to use defined terms in a contract and assign those defined terms any meaning they please, and courts will use those definitions in effectuating the parties' agreement. *See TEC Olmos, LLC v. ConocoPhillips Co.*, 555 S.W.3d 176, 181 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("A term's common-law meaning will not override the definition given to a contractual term by the contracting parties."). However, "[w]hen a contract leaves a term undefined, we presume that the parties intended its plain, generally accepted meaning. *Epps v. Fowler*, 351 S.W.3d 862, 865–66 (Tex. 2011) (citing *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005); *Intercont'l Group Pship. v. KB Home Lone Star, L.P.,* 295 S.W.3d 650, 653  (Tex. 2009); *Tite Water Energy, LLC v. Wild Willy's Welding LLC*, No. 01-22-00158-CV, 2023 WL 5615816, at *8 (Tex. App. – Houston [1st Dist.] Aug. 31, 2023, *pet. Denied*) ("…Texas courts, routinely look to dictionaries and other court opinions to determine the plain and ordinary meaning of undefined contract terms.")

In the Crosby MSSC, the parties created definitions for various terms and used capitalized versions of those words or phrases throughout the document when they intended them to have the meaning set forth by the parties in the MSSC. For example, the parties were careful to use "Contractor" to refer to Crosby, but used "contractor" when the word was not intended to denote Crosby. *See, e.g*., ECF 28-3 at ¶ 20.0 (using both defined term "Contractor" and undefined term "contractors"). The term "subcontractor" appears in the Crosby MSSC both as an uncapitalized, undefined term in the definition of Company Group and as a capitalized, defined term in the definition of Contractor Group. ECF 28-3 at ¶ 2.1. The term "subcontractor" as used in the definition of Company Group must be given its plain and ordinary meaning, while the capitalized term "Subcontractor" must be given the meaning set forth by the parties in its definition. *See* ECF 28-3 at ¶ 2.1 (defining "Subcontractor" to mean "*contractors* and materialmen retained by [Crosby] to perform any part of the Services or provide any Goods or Equipment hereunder on behalf of [Crosby].").

When giving an undefined term its plain and ordinary meaning, Texas courts look first to dictionary definitions and then consider other authority. *Pharr-San Juan-Alamo Indep. Sch. Dist. v. Texas Pol. Subdivisions Prop./Cas. Joint Self Ins. Fund,* 642 S.W.3d 466, 474 (Tex. 2022) ("To determine the common, ordinary meaning of undefined terms used in contracts, statutes, and other legal documents,

[Texas courts] typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities.' ")(citation omitted); *Anadarko Petroleum Corp. v. Hous. Cas. Co*., 573 S.W.3d 187, 192 (Tex. 2019) (citation omitted); *Epps v. Fowler*, 351 S.W.3d 862, 865–66 (Tex. 2011) (collecting cases). According to the Merriam Webster Dictionary, a subcontractor is "an individual or business firm contracting to perform part or all of another's contract." MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/subcontractor (last visited August 15, 2024). Black's Law Dictionary defines subcontractor as "[s]omeone who is awarded a portion of an existing contract by a contractor, esp. a general contractor." *Subcontractor*, BLACK'S LAW DICTIONARY (12th ed. 2024).

The Court also looks to relevant caselaw to determine the plain and ordinary meaning of the term subcontractor. The parties have not cited, and the Court has not found a Texas case defining the term subcontractor in the indemnity context presented here. However, the Fifth Circuit has written that: "By definition, a subcontractor enters into an agreement with a contractor, rather than the principal party whose performance is payment in exchange for the provision of goods or services or the completion of a project." *Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prod. Co*., 448 F.3d 760, 778 (5th Cir.), (citing Black's Law Dictionary 1464 (8th ed. 2004), *amended on reh'g*, 453 F.3d 652 (5th Cir. 2006). The Fifth

Circuit has also defined a subcontractor as "one who takes a portion of a contract from the principal contractor or another subcontractor." *Avondale Industries, Inc. v. International Marine Carriers, Inc.,* 15 F.3d 489, 494 (5th Cir.1994). The definitions of subcontractor set forth in dictionaries and case law all require a contract in addition to the subcontractor's contract and of which the subcontractor's work is a portion. In other words, under the plain and ordinary meaning of the term, a subcontractor relationship exists when Party A (principle party) contracts with Party B (contractor) for certain work, and in turn, Party B (contractor) contracts with Party C (subcontractor) to perform a portion of the work for which the Party A contracted with Party B.

The summary judgment record demonstrates that MOF was a contractor of MDC, and the MOF MSSC defines MOF as "Contractor." ECF 28-4 at1. But, the record is devoid of any evidence that MOF:

- "contract[ed] to perform part or all of another's contract" (Merriam Webster definition of subcontractor);

- "was awarded a portion of an existing contract by a contractor" (Blacks' Law Dictionary definition of subcontractor); or

- "took a portion of a contract from the principle contractor or another subcontractor" (Fifth Circuit definitions of subcontractor).

Nothing in the summary judgment record demonstrates that MOF was a subcontractor of any entity listed in the Crosby MSSC's definition of "Company Group" [MDC, Texas Operator, MTE, or Reeves]. The record contains evidence

13

only of a contract between MDC as Party A (the principal party whose consideration is payment in exchange for the well services) and MOF as Party B (the contractor who agreed to perform the work in exchange for payment from Party A).

Both in response to MDC's Motion for Summary Judgment and in its own Motion for Summary Judgment, Crosby puts forth a creative but ultimately unpersuasive argument which attempts to overcome the absence of a contract from which the MOF MSSC takes a portion.  Crosby's argument is summarized as follows:

- Reeves contracted, via the JOA, with Texas Operator to be the well operator;

- The work performed by MOF was part of the work for which Texas Operator was responsible as the well operator;

- When MDC hired MOF to perform the work, MDC was conducting the business of Texas Operator and acting on behalf of Texas Operator;

- Because the work was performed for the benefit of Texas Operator, MOF was a contractor of Texas Operator and a subcontractor of Reeves;

- The Crosby MSSC includes Reeves in the definition of "Company;"

- The definition of "Company Group" in the Crosby MSSC includes subcontractors of Company.

ECF 33 at 2-4; ECF 29 at 9-15.  Crosby's argument for why MOF was a subcontractor of Reeves is depicted visually in the following graphic:



The red dotted lines represent the "missing" contract or contracts that Crosby's argument imputes.  Crosby argues that because Reeves, the well owner, entered into the JOA with Texas Operator, the contract MDC signed with MOF for well services was for the benefit of Texas Operator; therefore, the Court must impute a contractual relationship between MOF and Texas Operator, which in turn

contracted with Reeves, thereby making MOF a subcontractor of Reeves.  But, the performance of work by MOF, pursuant to a contract with MDC and which is "for the benefit of" or "on behalf of" Texas Operator, does not establish a *contractual* relationship between MDC and Texas Operator or between MOF and Texas Operator.  Crosby's argument that only Texas Operator and Reeves *had authority to contract* with MOF for well services cannot change the fact that it was MDC who *actually contracted* with MOF.  *See* ECF 29-7 at 13, 29, 82-84, 93-96; ECF 28-6 at 8 (various testimony of Paul Cypher, COO of MDC, reflecting that MDC—not Texas Operator—contracted with vendors to perform well services).  Simply put, Crosby argues that even though Texas Operator *did not* contract with MOF, it *should have*.  Crosby cannot create a contract between two parties just because Crosby believes the contractual relationship *should have been* between those parties.

The only contract in the summary judgment record to which MOF is a party is the MOF MSSC.  The record also includes the invoice (admitted without objection at the oral hearing) from MOF to MDC for the work performed on the day of Leyva's injury.  Furthermore, Crosby sent a subpoena to MOF requiring the production of any and all contracts between MOF and any MDC-affiliated entity, in response to which, MOF produced only the single MOF MSSC dated June 2, 2014. Thus, summary judgment record demonstrates that the only contract MOF entered into with an MDC-affiliated entity is the MOF MSSC.  *See* ECF 28-6 at 8 (Cypher

testifying that the MOF MSSC was the only contract that existed between MOF and *any* MDC-affiliated entity).

The summary judgment record is also devoid of any evidence of a contract between MDC and Texas Operator or between MDC and Reeves. Completely absent is any other contract between MDC and another MDC-affiliated entity that would make MDC a contractor and MOF a subcontractor. Nothing in the summary judgment record supports a determination that MOF was a "subcontractor" under the plain and ordinary meaning of that term.

Crosby relies on *In re: Heritage Consolidated, LLC*, 765 F.3d 507 (5th Cir. 2014) as legal authority for its argument that MOF was a subcontractor of Reeves. The Court finds *In Re: Heritage* inapplicable and unpersuasive in this case. To begin with, the Court is tasked with interpreting the plain and ordinary meaning of unambiguous contract terms such as "subcontractor." The Fifth Circuit's opinion in *In re: Heritage* involves a determination of who can be a "mineral subcontractor" for purposes of the Texas mineral lien statute. TEX. PROP. CODE ANN. ¶¶ 56.001 *et seq*. The Texas mineral lien statute and the cases interpreting it do not provide the plain and ordinary meaning of "subcontractor" as used in the definition of Company Group in the Crosby MSSC. *See XOG Operating, LLC v. Chesapeake Expl. Ltd. P'ship*, 480 S.W.3d 22, 28 (Tex. App.--Amarillo 2015, pet. granted), *aff'd*, 554 S.W.3d 607 (Tex. 2018) (noting that "the regulatory framework of the Railroad

17

Commission . . . is of no consequence to the interpretation of an unambiguous agreement.").

Yet, even if the Court were persuaded that case law applying the Texas mineral lien statute could or should inform the plain and ordinary meaning of the word "subcontractor" as used in the Crosby MSSC, MOF does not meet the definition of "mineral subcontractor" set forth in the Texas mineral lien statute and discussed in *In re: Heritage* for the very same reason MOF is not a subcontractor under the plain and ordinary meaning of the term:  the absence of a *contractual relationship* between MOF or MDC on the one hand, and Texas Operator or Reeves on the other.   Crosby cites *In re: Heritage* for the principle that "if a well has multiple owners, it is possible for a single laborer to be both a subcontractor and a contractor for the work they perform on that well."  *In re: Heritage,* 765 F.3d at 512. But the Fifth Circuit stated clearly that whether a vendor or laborer is a subcontractor or a contractor depends on whether there is a line of contractual relationships between the mineral owner (analogous to Reeves) and the laborer or vendor (analogous to MOF):

> When determining whether a laborer is a subcontractor or a contractor, the important question is whether there is a *contractual relationship* between *the owner and the laborer performing the work*: If there is a direct contractual relationship between an owner and the laborer, then the laborer is a contractor with regard to that owner. If there is a contract between the laborer and another party who has a contract with an owner, then the laborer is a subcontractor.

*Id.* (emphasis in original). Like the plain and ordinary meaning of subcontractor, the definition of "mineral subcontractor" also requires a contractual link between the principle party (Party A), the "mineral contractor" (Party B), and the "mineral subcontractor" (Party C).[2] But as defined in the Texas mineral lien statute, the definition of "mineral contractor" requires a contract with the mineral property owner or its agent:

> "Mineral contractor" means a person who performs labor. . . under an express or implied contract with a *mineral property owner* or with a trustee, agent, or receiver of a *mineral property owner*.

TEX. PROP. CODE ANN. § 56.001; s*ee also Noble Expl., Inc. v. Nixon Drilling Co.*, 794 S.W.2d 589, 592 (Tex. App. — Austin 1990, no writ) (finding no valid mineral lien because driller did not have an express or implied contract with the property owner, and instead had contracted with the operator).

Here, as was the case in *Noble Exploration, Inc. v. Nixon Drilling,* the summary judgment record contains no evidence of the key element—an express or implied contract between MDC on one hand, and on the other hand, Reeves or Texas

---

[2] "Mineral subcontractor" means a person who: (A) furnishes or hauls material, machinery, or supplies used in mineral activities under contract with a mineral contractor or with a subcontractor; (B) performs labor used in mineral activities under contract with a mineral contractor; or (C) performs labor used in mineral activities as an artisan or day laborer employed by a subcontractor. TEX. PROP. CODE ANN. § 56.001..

Operator, assuming Texas Operator could be considered Reeves's agent. *See* ECF 29-7 at 93-95 (Cypher's testimony regarding the absence of any contract between MDC, on the one hand, and Reeves or Texas Operator on the other). *In re Heritage* and cases applying the Texas mineral lien statute do not simply *impute* a contract with the mineral owner as Crosby suggests doing in this case. Thus, even if the Court believed that the Texas mineral lien statute and the cases interpreting it applied in this case to inform the plain and ordinary meaning of "subcontractor," MDC is not a "mineral contractor" absent a contract with Reeves or Reeves's agent, and therefore, MOF is not a "mineral subcontractor" under the mineral lien statute.

Crosby's argument that MOF's Proof of Claim in MDC's bankruptcy establishes that MOF meets the definition of subcontractor also fails. To begin with, MOF's Proof of Claim, including the mineral lien affidavit made under penalty of perjury, does not control or inform the plain and ordinary meaning of subcontractor as set forth in the Crosby MSSC. Just because MOF claimed to have a contract with Texas Operator in the mineral lien affidavit does not make it so. As already discussed, no such contract appears in the summary judgment record. *See also*, ECF 32 at 4-5 (discussing the production of only the MOF MSSC and no other contract in response to Crosby's subpoena to MOF). Additionally, MOF's lien claim identifies MDC, not Texas Operator, as the Debtor. ECF 29-9 at 2. Next, MDC objected to the claim as one that should be "reclassified, modified, or disallowed."

*Id.* at 8.  Specifically, the lien claim was objected to "as incorrectly or improperly classified," and the objection stated that "[e]ach of the proof of claims in Exhibit C asserting secured status fails to establish, in whole or part, and the books and records and the Schedules do not support, any of the claimant's purported rights to secured status for the Proof of Claim set forth therein." *Id.* at 12. In short, the Proof of Claim does not establish that MOF was a contractor of Texas Operator.

The indemnity issues involving the definition of "subcontractor" in *Walter Oil & Gas Corp. v. Safeguard Disposal Sys., Inc.,* 961 F.Supp. 931 (E.D. La. 1996) are directly on point.  Like this case, *Walter Oil and Gas* involved parallel contracts between an oil and gas production company (WOG) and two separate contractors (MarDrill and SDS).  MarDrill and WOG entered into a Daywork Drilling Contract, while SDS and WOG entered into a Master Service Contract.  MarDrill and SDS were each performing services for WOG pursuant to their respective contracts when SDS's employee was injured using a ladder provided by MarDrill. The parties stipulated that MarDrill was solely at fault for SDS's employee's injuries, WOG paid to settle the personal injury suit, and both WOG and MarDrill brought suit against SDS for indemnity under the SDS Master Services Contract.

The SDS Master Services Contract identified SDS as "Contractor" and WOG as "Company."  The indemnity provision stated in relevant part:

> Contractor agrees to indemnify defend and hold harmless Company from . . . all claims . . . arising out of. . . or in connection with . . . the

21

activities of the Contractor [SDS], . . . caused by the negligence of Company [WOG], its agents, employees, officers directors, or *subcontractors*. . . .

*Walter Oil & Gas Corp*., 961 F. Supp. at 934. WOG argued, without specific legal or factual authority, that MarDrill was its subcontractor. *Id*. The court disagreed, writing:

> "A subcontractor is one who takes a portion of a contract from the principal contractor or another subcontractor." In both the Master Service Contract between WOG and SDS and the Daywork Drilling Contract between WOG and MarDrill, SDS and MarDrill are referred to only as "Contractor." * * * While parties to a contract are free to define terms within their agreement in any manner they see fit, the language of those definitions must surely be read so as to give them their "plain" meanings. Here, the parties clearly intended and emphasized the intention to confer upon MarDrill the status of independent contractor and not subcontractor. Had the parties to the Master Service Contract intended to include other independent contractors in the definition of the Company in the preamble or in the indemnity provision, the term could have easily been included. It was not.

*Id.* (internal citations omitted). In this case, the MDC entities and Crosby could have added the word "contractors" (lowercase) to the definition of "Company Group" just as they did when creating the definition for the defined term "Subcontractors." They did not.

Because the summary judgment record demonstrates that MOF was a "contractor," not a "subcontractor," MOF is *not* included in the definition of "Company Group" for whose conduct MDC owes Crosby and Marrufo a duty to defend, indemnify, or insure against.

### B. Crosby's alternative reformation claims should be dismissed.

In the alternative to its declaratory judgment claim, Crosby asserts two claims for reformation of the Crosby MSSC based on mutual mistake. ECF 13 at 5–6. In the first reformation claim, Crosby asserts that the term "contractor" was omitted from the contract's definition of "Company Group." ECF 13 at ¶ 16. In its summary judgment motion, MDC argues Crosby's first reformation claim fails because MDC's corporate representative and then-chief operating officer testified that the limitation of "Company Group" to subcontractors was not inadvertent. ECF 28 at 13–14. Crosby filed a supplemental opposition to MDC's motion stating that it does not oppose this argument, effectively abandoning its first reformation claim. ECF 38.

Crosby's second reformation claim pertains to Exhibit A clause 6 of the Crosby MSSC which addresses the parties' agreements concerning the insurance policies obtained to fulfill their contractual obligations. ECF 13 at ¶ 17. The insurance obligations in Exhibit A apply only "to the extent of the liabilities and/or risk of loss assumed … under the Contract." ECF 28-3 at 18. In other words, it applies only to the extent there is a valid indemnity owed. Because the Court recommends a finding that no indemnity is owed, Crosby's second reformation claim is moot.

23

### III.   Conclusion and Recommendation.

For the reasons stated above, the Court RECOMMENDS the following:

- That Plaintiff MDC Energy, LLC d/b/a MDC Texas Energy, LLC's Motion for Summary Judgment (ECF 28) be GRANTED;

- That Defendant Crosby Energy Services, Inc.'s Motion for Summary Judgment (ECF 29) be DENIED;

- That it be ORDERED, ADJUDGED, and DECREED that MDC Energy, LLC d/b/a MDC Texas Energy, LLC owes no duty to defend, indemnify, or provide insurance coverage to Crosby Energy Services, Inc. or Jeremy Marrufo in connection with the state court suit styled *Ruben Leyva v. Jeremy Marrufo and Crosby Energy Services, Inc.*, Cause No. 21-04-23976-CVR, in the 143rd District Court of Reeves County, Texas; and

- That Crosby's alternative reformation claims be DISMISSED.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto.*

*Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on August 16, 2024, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge